Good morning, ladies and gentlemen. Our first case for argument this morning is Frank v. Walker. Mr. Young. Good morning, Your Honors, and may it please the Court. My name is Sean Young, and I am counsel for the plaintiffs in this case. We are here today because the District Court has refused to properly resolve a narrow claim that this Court's prior appeal decision in Frank 1 left open. Frank 1 held that the burdens imposed by Wisconsin's voter ID law were not sufficiently widespread to justify facial invalidation. But that ruling leaves the door open for the District Court to consider whether the law imposes substantial burdens on a narrow slice of the population,  for purposes of determining whether the law should be enjoined solely for that class. The District Court failed to recognize this distinction, and therefore this Court should vacate the District Court's dismissal of our class-based and arson verdict claim and remand so that the District Court can finally make the necessary findings in the first instance. And here I'd like to focus on these two key points. First, Frank 1's facial ruling held that the burdens imposed by voter ID were insufficiently widespread to justify facially invalidating the law for everyone. And it was patterned after Justice Stevens' controlling plurality opinion in Crawford. There was a real quantitative focus on how many people would be affected,  For example, Frank 1 found that the minimal burdens imposed on the vast majority of Wisconsin voters were amply justified by the state's interests. It found that photo ID is not an obstacle to a significant number of persons who otherwise would cast ballots. It faulted the District Court for failing to show substantial numbers. What percentage of the voter population would be deterred from turning out to vote? Failure to ascertain how many people fell into a particular category. Like Justice Stevens' opinion, however, Frank 1's focus on numbers left the door open to a finding that Wisconsin's voter ID law imposes substantial burdens on an individual or a narrow subset of the population, warranting relief solely for that individual or class or certified class. In doing so, it rightly did not embrace Justice Scalia's more sweeping concurrence, which would have forever foreclosed any individual or class-based challenge to a voter ID law. And rejecting Justice Scalia's more sweeping concurrence makes sense for two reasons. Number one, the state's interest in voter ID is not a trump card. It does not always outweigh whatever heightened burdens are imposed on an individual or a narrow slice of the population. And even if the vast majority of voters do just fine under the voter ID law, individuals or narrow subgroups who face difficulties, particular difficulties, obtaining ID must... What's a difficulty? Well, in our case, our certified class, or the class we're trying to certify, consists of three categories of voters. The DMV will not issue photo IDs to people whose birth certificates have mismatches or misspellings in their birth certificates. Those people have to go through... Do we know whether that's true even after the changes required by the Supreme Court of Wisconsin? It is true, Your Honor. The DMV policy as it's written does not make any accommodation for names that don't match. It's DMV's policy not to issue ID to those people. And people without Social Security cards are in a catch-22 situation. You need a Social Security card to get a photo ID, but you need a photo ID to get a Social Security card. And for people whose birth certificates don't exist, they have to go to the DMV multiple times, wait an indefinite period of time, gather ancient school records or baptism certificates, and then bring those documents with hat in hand to the DMV and just hope that those documents are deemed acceptable. And so the answer to that is just show up and vote, right? The answer... No, because they don't have ID. No, no, I mean, to do away with that, just show up and vote. That's right. The remedy that we're seeking... So anybody can just show up and vote. The remedy that we're seeking is an affidavit remedy that would only apply to our narrow class. You have to affirm that you fall into one of these categories under penalties of perjury. You have to sign that statement in front of an elections official, and then you would be able to cast a vote. And those, the people, the narrow size of the population who signs those affidavits, those affidavits are only a very, very small percentage of all the votes that will be cast. Judge Adelman was under the impression that he had already resolved this claim. His impression was incorrect, Your Honor. He did not make any findings related to class certification, and he didn't isolate the specific categories of people that we're looking at. He didn't look at whether only those people, assuming they're sufficiently numerous such that Joiner's impractical, only those people face substantial burdens representing a significant increase over the usual burdens of voting. He didn't balance those interests with the state's interests, and if he did, that balancing was wrong, as this court held in Frank 1. He didn't weigh the state's interests properly, and he didn't consider that balancing in the context of imposing a straightforward affidavit class-based remedy. That's what we're asking the district court to do. But more to the point, this court, this court's findings and conclusions, and that's what we have to look at because of the mandate rule. This court's findings and conclusions do not preclude the district court from making those findings in the first instance. In that sense, I'd like to direct this court's attention to Gertz, the Seventh Circuit case in Gertz. In that case, the issue of actual malice was fully litigated in the district court below before a jury, and then it went on to several appeals, and then the appeals courts remanded the case. But because the appeals courts did not address the issue of actual malice, this court held that the district court could relitigate the issue of actual malice upon remand. So even if the district court did, in some abstract sense, reach these findings, it can do so again because of the mandate rule. And so the district court essentially misread Frank 1, Frank 1's facial ruling, as adopting essentially Justice Scalia's more sweeping concurrence, precluding the district court from even considering class certification or whether a voter ID imposes substantial burdens on the narrow class, such that a class-based remedy is appropriate. And for that reason, we're asking that this court vacate the district court's dismissal of our class-based claim, remand for its consideration in the first instance, and also as a housekeeping matter. For the reasons that we stated in our 28J letter, this court should also vacate the dismissal of our veterans' equal protection claim with instructions to dismiss that claim as moot. Unless there are any further questions, I'd like to reserve. Just a question to clarify the procedural posture. When the case was back in the district court, there had been a couple of claims, the VA claim among them, that had not been resolved when the case was last here. Correct. And so after our decision, the court took up those claims, along with the class certification claim for what the parties have been calling this Class I class. That's right. And the narrower definition that you're talking about now was proposed during the briefing of that renewed class certification motion, as I understand it. Is that a fair statement of procedural posture? For the most part, yes. The class-based claim that we were pursuing in the district court below has been there from the very beginning. We brought a class-based claim in our complaint, our amended complaint, our motion for class certification, our motion for preliminary injunction, post-trial briefing, and we did simplify our proposed definition of the class after Frank I to reflect the developments on the ground, namely this most recent procedure doesn't meaningfully help the people that we've defined in these narrow categories. And defendants, I note, don't even really dispute that. And so it was simplified. We'd submit that the federal rules of civil procedure 15 and 23 provide, allow this kind of... Right. I mean, this has been a bit of a moving target because the law has been changing. That's right. The state supreme court has made a ruling on what the state regulatory authorities have to do. And so there needed to be some adaptation, I suppose, of the class. And that's your argument here. That's right, Your Honor. And it would be a little strange if we would just wouldn't cling to a four-year-old definition. And the federal rules allow this. And the ultimate inquiry in terms of whether we're allowed to do this, I think, is prejudice. Is there prejudice to the defendants? And I note that throughout the court proceedings below, defendants never argued any kind of prejudice from our simplification of the class. I don't even think they argue it on appeal. And so for that reason, we're perfectly allowed to do that. Unless there are any further questions, Your Honor, I'd like to reserve the rest of my time for rebuttal. Certainly, Mr. Young. Mr. Test. Thank you, Your Honor. Meshach Zaitlin, Solicitor General on behalf of the state of Wisconsin. From the beginning of this case, from the original complaint to the amended complaint, to the motion for classification, to the post-trial briefing, to the briefing before this court in Frank 1, to the oral argument in this court in Frank 1, there's been one and only one relevant claim here, which is claim 1 on behalf of class 1. In their reply brief after Frank 1, the plaintiff for the first time asserted that hiding in the complaint the whole time, hiding in this case the whole time. Now, you're suggesting, I think, that the district court should have rejected the plaintiff's current claims on the ground that they weren't timely raised in the district court. But that's not what Judge Adelman said. He said that they were foreclosed by this court's decision. And I must say, I find that very hard to accept, because the gist of the case before us the first time was the district court's holding that because some people had trouble getting photo ID, the law couldn't be applied to anyone. We rejected that. Why does that necessarily block an argument on remand that because some people have undue difficulty getting ID, there should be relief for those some people? Right. That is not my understanding of the district court's holding. What I understood them to be holding was that there is only one claim in this case that's relevant here is the VA ID and stuff. Okay. Where do I go in the district court's opinion to find the conclusion that the claim was simply not timely raised as opposed to an argument that it was rejected by our opinion? Your Honor, what the district court said is there's only – I'm asking a concrete question. Where do I go in the district court's opinion? What should I look at particularly? The language that he said was that is the claim that I resolved. That is the language that he used. That's not a finding that the claim has never been properly raised in the district court. Well, Your Honor, let me try to say it a different way. The judge believed, looking at the complaint and looking at the briefing, that there is only one claim and there has only ever been one claim in this case. So his conclusion that – Yeah, but that's where you lose me. Perhaps the plaintiffs have ever only made one claim. But what the district court made of that claim was an injunction against the use of the statute with respect to anybody. We said that was a mistake. The question is, how can the conclusion that the whole law can't be annulled amount to a conclusion that it's not legally possible to provide relief for a subclass of people? Well, Your Honor, in fact, in footnote four of the judge's decision, he said that – There ain't any footnote four in our decision. If we're trying to find something in our decision foreclosing this claim, where would one look? So, Your Honor, with regard to footnote four, and if I may explain, what footnote four says is that this kind of claim, an as-applied claim, could potentially be raised. But that's not the kind of claim that was raised here. And the State, in its brief, did not dispute that somebody could, consistent with Frank 1, attempt to raise an as-applied claim. And what that person – I must say, I don't see what as-applied and on-its-face matters. It's the distinction between all and none. The fundamental thing being litigated in the first appeal was whether the difficulty some people had supported an injunction against the application of the statute to everybody. The question now is whether the difficulty some people have might support relief limited to the people who are having difficulty. I understand that, Your Honor. And the State does not believe that Frank 1 resolved anybody's ability in the future to bring such a claim. What the State's point is, is that claim just didn't exist in this case any different – there was no two claims. Judge Sykes, at the last oral argument, I went and listened to it in preparation for this, you asked the other counsel for the plaintiffs there, is your claim an as-applied claim or a facial claim? And the answer wasn't, we have both, we have two. The answer was, well, we had an as-applied claim, but it was seeking a facial remedy. And that was the answer that was given to the Court, and that is what the District Court relied upon, and that is what the State relied upon. For the plaintiffs to then go back on remand, contrary to that understanding, and say, well, ah-ha, there was actually two different claims here. There was a facial claim, and there was an as-applied claim. That is, I think, foreclosed not only by just simple waiver, but also foreclosed by several aspects of the mandate rule. And, you know, but to the extent the Court were to believe that this claim was not technically barred. I do think that the very logic of Frank would foreclose the claim in the way they have articulated it. And this is, you know, similar to what happened in the Stewart v. Marion County case, which both sides here cited. In that case, an individual brought a narrower claim against the Indiana law that had been upheld in Crawford. And the Court there didn't say, you can't bring this claim period based on Justice Scalia's opinion. What they said is, if you look at the reasoning in Crawford and you look at your allegations here, the burdens you've alleged are not sufficient to make any claim under Crawford. And so to the extent this Court disagrees with the State that the three categories claim raised for the first time in a reply brief after the appeal is somehow live, I would submit that then you would apply the logic of Frank and Crawford to that claim. And if I may, to go through those three categories. The most obvious one that foreclosed by both Frank and Crawford is their category of anyone that has to go to more than one agency rather than a DMV. With respect, that doesn't come close to satisfying the articulation of burden that this Court said in Frank, which is impossible or even hard to get a photo ID. It is not impossible or even hard for someone to go to two agencies if it's not impossible or even hard for someone to go to one agency. And that is especially true when the second agency is usually the Social Security Administration, which is a Federal agency, which is... That's an argument on the merits. Maybe you'll win on the merits. But the district court didn't reach the merits. Well, Your Honor, if Your Honor would like me to return to the waiver and the mandate rule arguments, I'm happy to do so. I thought that, you know, that we had engaged in a call beyond that and I wanted to discuss our alternative argument for affirmance because, of course, the state and any appellee has a right to make an argument for an alternative basis for affirmance. So that's the first category. Do you think that argument is one that could be applied as a matter of law without any findings by the district court or without any knowledge of how the Supreme Court of Wisconsin's procedures have affected the process of getting photo ID? Well, Your Honor, I would note that the plaintiffs moved on the very day this court issued its frank mandate for a permanent injunction. They didn't attempt to take discovery. They didn't attempt to develop the factual record with regard to how the DOT procedure is moving. They just... Perhaps that would be a reason why the district court would rule in your favor. I'm just trying to figure out what's before us. We can't make factual inquiries or draw factual inferences. Well, there's a record that's been developed. You can make an argument that it's legally impossible for something to be true. Are you arguing that no matter what the difficulty any particular set of people faces in getting photo ID, that you can never win a claim? Not at all, Your Honor. Then we couldn't resolve this, say, on the pleadings under 12C. Well, you could. I mean, in Stewart v. Marion County, that was obviously by a district court, but that was resolved based on the papers that were there. And I think this court, given that there is now a closed record and appeal, this court could look at the face of what they're saying. And, for example, one of their categories is you have to visit two agencies. At the very least, this court could again reiterate that visiting two agencies is not the sort of burden that satisfies what this court said in Frank and what the Supreme Court said in Crawford, which is this court articulated it as impossible or even hard. So that's with regard to the first category. And there was a question earlier about how the DOT process works with regard to the folks in the other categories. It is simply not true that the DMV would not grant a photo ID to someone with a simple mismatch. This process has now been going on for a little while. We've had more than 1,000 grants, only 45 denials. And I will also note that they did not attempt to develop anything about that. There is another case currently pending before the Western District of Wisconsin where the plaintiffs have attempted to amend their complaint to deal with the DOT procedure. And that's going to be at a status conference next week, and those issues can be vetted there. Those issues should not be permitted to be raised here since there was no indication ever before their reply brief, before the appeal, that they were raising some sort of narrower, class-based claim on behalf of these three categories. If the court doesn't have any further questions, I urge the district court session to be adjourned. Thank you, counsel. Anything further, Mr. Young? One sentence, Your Honor. The discovery and merits issues raised by my friend on the other side, those are issues that the district court should decide in the first instance. And the logic of Frank 1 about the widespread nature of the burdens don't preclude our narrow claim, unless this court has any further questions. Thank you. The class certification motion that was pressed on remand was initially incorporating the definition of this class 1 as it was stated in the complaint, correct? That's right. So it was the broader definition than the one that you're pressing now. Correct, Your Honor. The simplified class that we propose in the court below is the class that we're now proposing because the district court never adjudicated the original class motion. Thank you, Your Honor. Thank you very much. The case is taken under advisory.